[Dkt No. 66]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

JOHN J. CARR, IV,

     Plaintiff,

        v.

SRA INTERNATIONAL, INC., and
CSRA, INC.,

     Defendants.

Civil No. 18-1034 (RMB/JS)

**OPINION**

APPERANCES:

BOCHETTO & LENTZ, P.C.
By:  Gavin P. Lentz, Esq.
     Anton Kaminsky, Esq.
141 High Street
Mount Holly, New Jersey 08060
        Counsel for Plaintiff

SCHNADER HARRISON SEGAL & LEWIS, LLP
By:  Lisa J. Rodriguez, Esq.
     Samantha Banks, Esq.
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002

     and

THE KULMAN FIRM
By:  Samuel Zurik III, Esq.
     Stephen L. Scott, Esq.
     Jennifer D. Sims, Esq.
1100 Poydras Street, Suite 1600
New Orleans, Louisiana 70163
        Counsel for Defendants

**BUMB, UNITED STATES DISTRICT JUDGE:**

This matter comes before the Court upon the Motion for Summary Judgment filed by Defendants SRA International, Inc. and CSRA, Inc. ("SRA").  Plaintiff, John J. Carr IV ("Carr"), SRA's former employee, asserts that SRA removed him from a large project, changed his title, and selected him for a reduction in force ("RIF") allegedly because of his whistleblowing activity, in violation of New Jersey's Conscientious Employee Protection Act ("CEPA").[1]  For the reasons stated herein, the Motion for Summary Judgment will be granted.

## I.    Facts

SRA, a government contractor for the military, employed Carr to manage and administer contracts within its Defense Group.  In late October or November 2017, Carr was selected for inclusion in SRA's RIF, along with approximately 40 other employees. (Defs' Statement of Undisputed Facts ¶¶ 39-40; Pl's Exs. AA, BB)  By then, Carr had been employed by SRA for approximately 12 years. (Defs' Statement of Undisputed Facts ¶ 3)[2]

---

[1]  The Court exercises diversity of citizenship subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  The parties are completely diverse and the amount in controversy exceeds the statutory minimum.

[2]  Carr became an SRA employee when Carr's employer, Galaxy Scientific Corporation, merged with SRA. (Defs' Statement of Undisputed Facts ¶ 3)

Geoff Tucker, Director of Contracts for the Defense Group, made the decision to include Carr in the RIF. (Defs' Statement of Undisputed Facts ¶¶ 27-29)  SRA contends that Tucker selected Carr because Carr "was the most expensive Contract Administrator on Mr. Tucker's team, and had a portfolio, i.e., the number and complexity of his contracts, that did not match up with his salary." (Defs' Statement of Undisputed Facts ¶ 29)

Carr concedes that he lacked work, but asserts that he only lacked work because he was removed from one of his biggest contracts, the CITS program, by Program Manager Tim Day and Carr's direct supervisor, Pamela Prisco. (Defs' Statement of Undisputed Facts ¶ 20)  Carr worked on the CITS project from February, 2010, until his removal in May, 2016. (Defs' Statement of Undisputed Facts ¶ 11)  In February, 2014, during the process of rebidding the CITS project, Carr raised objections to various people, including Tim Day, that allocation of certain costs to the old contract, as opposed to the new contract, was impermissible. (Pl's Statement of Undisputed Facts ¶ 17)  The Contracting Officer agreed with Carr, and changes were made. (Id. ¶ 19)  Carr testified that, as a result, he was "vilified that he wasn't a team player," by Tim Day and others. (Id. ¶ 20)  Although more than two years passed between Carr's cost allocation objection and his removal from the CITS program, Carr believes ill-will was harbored against him during that time.

2

(Pl's Statement of Undisputed Facts ¶ 22)   Tim Day, on the other hand, testified that Carr was removed in May, 2016 because Phil Reuning, effectively SRA's client on the CITS program, did not get along with Carr and complained to Day that Day "needed to do something about it" or the business would be impacted. (Defs' Statement of Undisputed Facts ¶ 18)   Several months later, in October 2016, Carr's title was changed from "Senior Contracts Manager" to "Contracts Advisor" (Defs' Statement of Undisputed Facts ¶ 6), which Carr contends was a demotion, although he admits his pay and benefits did not change as a result of the change in title. (Id.)

Also during the course of Carr's employment, Carr twice acted as a relator against SRA in *qui tam* False Claims Act suits alleging contracting fraud-- first in 2007, and then again in November, 2013. (Id. ¶¶ 41-42)   The second suit resulted in a settlement with the federal government.   In a press release issued by the United States Attorney's Office for the District of New Jersey on its website in June 2016, Carr was identified as the *qui tam* relator. (Pl's Ex. R)[3]   Approximately three months earlier, in March, 2016, a copy of the *qui tam* complaint bearing

---

[3]   There is no evidence in the record that the settlement of the case, or Carr's involvement in it, were publicized anywhere other than on the U.S. Attorney's website.   In other words, there is no evidence in the record that the case, or Carr's involvement in it, were covered in any news source or other media.

3

Carr's name was provided to SRA's lawyer, Jason Silverman, after
the Court partially lifted the seal on the case. (Pl's Ex. S)

The Complaint asserts one count: violation of CEPA,
N.J.S.A. 34:19-1 et seq.

## II.   <u>Summary Judgment Standard</u>

Summary judgment shall be granted if "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).  A fact is "material" only if it might impact the
"outcome of the suit under the governing law." <u>Gonzalez v.
Sec'y of Dept of Homeland Sec.</u>, 678 F.3d 254, 261 (3d Cir.
2012).  A dispute is "genuine" if the evidence would allow a
reasonable jury to find for the nonmoving party. <u>Id.</u>

In determining the existence of a genuine dispute of
material fact, a court's role is not to weigh the evidence; all
reasonable inferences and doubts should be resolved in favor of
the nonmoving party. <u>Melrose, Inc. v. City of Pittsburgh</u>, 613
F.3d 380, 387 (3d Cir. 2010).  However, a mere "scintilla of
evidence," without more, will not give rise to a genuine dispute
for trial. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir.
2001).  Moreover, a court need not adopt the version of facts
asserted by the nonmoving party if those facts are "utterly
discredited by the record [so] that no reasonable jury" could
believe them. <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  In

4

the face of such evidence, summary judgment is still appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Walsh v. Krantz, 386 F. App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id. In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord. Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment."). However, "the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial"; the evidence does not

5

need to be in admissible form at the time of summary judgment.
FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

### III. **Analysis**

Though somewhat muddled, Carr asserts two separate theories
of retaliation based on two separate whistleblowing activities.
First, Carr asserts that Tim Day removed Carr from the CITS
project for objecting to certain contractual cost allocations,
and according to Carr, his removal from that large contract in
May 2016, and his change in job title in October 2016, left him
vulnerable to termination in the November 2017 RIF.  Second,
Carr asserts he was selected for inclusion in the RIF because of
his participation in False Claims Act suits against SRA,
particularly the second suit that was partially unsealed in
March, 2016.  Each theory is addressed in turn.

With regard to the cost allocation objection theory, SRA
argues the CEPA claim is time-barred.  CEPA has a one-year
statute of limitation, N.J.S.A. 34:19-5, and the claim accrues
upon completion of the adverse employment action.  Roa v. Roa,
200 N.J. 555, 569 (2010).  The adverse employment action under
this theory is Carr's removal from the CITS project.[4]  The

---

[4] Carr also asserts that his change in title, which happened
around the same time, was an adverse employment action. It is
undisputed, however, that the change in title did not change
Carr's pay or benefits.  There is no record evidence that the
title change materially altered the "terms and conditions of

removal was completed in 2016, but the complaint in this case was not filed until January, 2018.  Thus, the CEPA claim based on this first theory is time-barred.  That Carr did not fully appreciate, in 2016, the consequences of the adverse employment action-- _i.e._, that Carr did not know, in 2016 that, as a result of the CITS project removal, he would be more vulnerable to a later RIF-- does not change the date upon which his CEPA claim accrued.[5]  Summary judgment will be granted as to this first theory of CEPA liability.

---

[Carr's] employment," therefore it is not an adverse employment action under CEPA, N.J.S.A. 34:19-2e.

[5]  Carr argues that his removal from the CITS project and title change were "continuing violations" that culminated in his inclusion in the RIF. (Opposition Brief, p. 20)  Thus, according to Carr, his CEPA claim based on the CITS removal and title change did not accrue until 2017 when the RIF occurred.  This argument fails.  The continuing violation doctrine "does not permit [] the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable. Each such discrete discriminatory act starts a new clock for filing charges alleging that act." Roa v. Roa, 200 N.J. 555, 569-70 (2010).
    Moreover, Roa teaches that the continuing violation theory must be based on a "continual, cumulative pattern of tortious conduct." 200 N.J. at 566 ; see also id. ("The premise underlying the doctrine is that the conduct becomes actionable because of its continuous, cumulative, synergistic nature."). The record evidence fails to establish such a continual, cumulative, synergistic pattern.  While Carr's removal from the CITS program and title change both occurred in 2016, a full year passed before Carr was terminated in the RIF, and there is no record evidence of any other alleged retaliatory act occurring in that year.

As to the second theory-- Carr's participation as a relator in a False Claims Act suit against SRA-- there is insufficient record evidence to establish a causal connection between the 2016 revelation that Carr was the relator and Geoff Tucker's 2017 decision to include Carr in the RIF. See Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003) (a CEPA plaintiff must prove "(1) he [] reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he [] performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him []; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.").

Geoff Tucker states in his declaration that he did not learn that Carr had served as a whistleblower in a suit against SRA until after this lawsuit was filed. (Defs' Ex. F, Tucker Decl. ¶ 10)  Carr, however, invites the Court to draw a contrary inference based on evidence that Tucker's supervisor, Catherine Garris, and SRA's General Counsel, James Haynes, knew at the time the RIF decision was being made, that Carr was the relator. (Opposition Brief, p. 12-13)  This evidence is insufficient to raise an issue of fact as to causation, however, because there is no record evidence to support an inference that either Garris

8

or Haynes told Tucker what they knew.  Moreover, while it is
undisputed that Garris and Haynes were required to approve
Tucker's selections for the RIF before it could be implemented,
Carr has proffered no evidence to support a finding that either
Garris or Haynes influenced Tucker's decision.  Indeed, Tucker
unequivocally states in his declaration that "Ms. Garris did not
make any suggestions regarding who she believed I should select
[for the RIF]."  (Defs' Ex. F, Tucker Decl. ¶ 7)

    Carr, in his sur-reply, attempts to raise an issue of fact
by relying on an email that Garris sent to Yvonne Johnson[6] which
states "I told [Haynes] that Option B is our preference." (Pl's
Ex. AA)  The attachment to the email identifies Option B as the
RIF-- with Carr's name and six others' listed for inclusion in
the RIF-- and Option A as the elimination of seven open
positions which would not include Carr.  Based on this brief
email, Carr argues that a reasonable factfinder could find "that
it was Garris or Haynes-- both of whom were aware of Carr's
status as a whistleblower-- that made the decision to include
Carr in the RIF." (Sur-Reply Brief, p. 3)  The Court disagrees.
Connecting Garris' expressed "preference" for Option B to a
finding that Garris, not Tucker, made the decision to terminate
Carr's employment, and that Garris did so because of Carr's

---

[6] The parties have not identified who Yvonne Johnson is.

whistleblower status, would require unreasonable inference upon unreasonable inference.  "Speculation and conjecture," however, "may not defeat a motion for summary judgment." <u>Eskridge v. Philadelphia Housing Authority</u>, 722 F. App'x 296, 300 (3d Cir. 2018).  Thus, the Court concludes that Carr has not proffered evidence raising an issue of disputed material fact as to causation.  Summary judgment will be granted as to the second theory of CEPA liability.

**IV.  <u>Conclusion</u>**

For the foregoing reasons, SRA's Motion for Summary Judgment will be granted.  An appropriate Order accompanies this Opinion.


August 6, 2020              _   s/ Renee Marie Bumb        _
                              RENÉE MARIE BUMB
                              UNITED STATES DISTRICT JUDGE